JUDGE DANIELS

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

09 CV 5454

---

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

  vs.

BLACKOUT MEDIA CORPORATION, formerly
known as FIRST CANADIAN AMERICAN
HOLDING CORPORATION, and SANDY WINICK,

              Defendants.

---

**ECF CASE**

____ CV _____ ( )

JUN 12 2009
U.S.D.C. S.D. N.Y.
CASHIERS

---

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1.     This matter involves a scheme to create publicly traded companies without registering the distribution of securities by penny stock issuer Blackout Media Corporation, formerly known as First Canadian American Holding Corporation ("FCAH"), and its former principal, Sandy Winick.[1]  Winick was FCAH's sole director, officer, and employee from mid-2002 to at least November 2007, and a controlling shareholder through at least 2005.

2.     From April 2002 to May 2004, FCAH spun off 59 wholly-owned subsidiaries (the "Subsidiaries") through unregistered distributions of their securities to FCAH shareholders (see Exhibit 1 attached hereto for a list of the Subsidiaries).

3.     None of the spinoff transactions had any legitimate business purpose, as the Subsidiaries were typically shell companies with no assets or business operations before the spinoff.  Rather, Winick used the spinoffs to create a trading market in the stocks of the Subsidiaries without providing the public disclosure that registration requires.

---

[1]     Because the conduct alleged in this complaint occurred primarily when the company was known as FCAH, the company will be referred to herein as FCAH where appropriate.

4.      While spinning off the Subsidiaries, FCAH never filed any of the required periodic reports with the Commission, and there was no publicly available financial information about FCAH or any of the Subsidiaries.  Although FCAH "reported" the spinoff transactions on Forms 8-K and, since May 2003, proxy statements on Schedule 14A, none of these filings contained any meaningful disclosure regarding the financial or business operation of FCAH or any of the Subsidiaries.

5.      Winick concocted and executed the spinoff transactions and benefited from them. During the spinoff period, Winick owned 83% of FCAH stock in his name, and had control over at least another 16.5% through his wife, several entities, and friends.  As a result of the spinoff transactions, Winick acquired total control of the Subsidiaries and assembled an inventory of "public company" shells for sale.

6.      Winick sold his controlling interests in many of the Subsidiaries to third parties seeking public financing.  He also assisted in getting some of the Subsidiaries' stocks traded over the counter and on the Pink Sheets by entering into trades or applying for trading symbols from Nasdaq.  In addition, Winick traded in the shares of a number of the Subsidiaries and profited by at least $3.2 million from 2004 through 2007.

7.      By engaging in the conduct described in this complaint, Blackout Media and Winick violated the registration, reporting, and proxy provisions of the federal securities laws. The Commission seeks a permanent injunction and civil penalties against Blackout Media and Winick.  The Commission also seeks from Winick an accounting, disgorgement with prejudgment interest, a penny stock bar, and surrender for cancellation of all stock Winick owns or controls in any Subsidiary or its successor.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(d)(5), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(d)(5), 78u(e), & 78aa. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate

commerce, of the mails, or of the facilities of a national securities exchange, in connection with

the transactions, acts, practices, and courses of business alleged in this complaint.

9.    Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15

U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the

alleged transactions, acts, practices, and courses of business occurred in the Southern District of

New York, including, but not limited to, Sandy Winick's trading in the securities of a number of

the Subsidiaries.

## THE DEFENDANTS

10.    Blackout Media Corporation, formerly known as First Canadian American

Holding Corporation, is a Wyoming corporation currently using an address in Bankok, Thailand.

It claims to be a holding company with subsidiaries operating in digital television, radio, Internet

and printing.  The company's common stock was registered with the Commission under Section

12(g) of the Exchange Act from October 1997 to June 2004 and has been quoted on the Pink

Sheets operated by Pink OTC Markets Inc. ("Pink Sheets") since at least 2002 (trading symbol

"BKMP").  FCAH filed a Form 15 to terminate its reporting company status on June 24, 2004.

11.    Sandy Winick, age 51, is a Canadian citizen who resides in Toronto, Canada.

Winick was FCAH's president and sole officer, director and employee from mid-2002 to

November 2007, and a controlling shareholder through at least 2005.

## FACTS

**A.    Background**

12.    FCAH's predecessor was a Nasdaq-traded Internet company, Adatom.com, which

ceased operations in 2001 but was maintained as a corporate shell.  In mid-2002, Sandy Winick

became Adatom.com's president and acquired 83% of its stock.  Winick moved the company's

incorporation from Delaware to Ontario, Canada in October 2002, changed its name to First

Canadian American Holding Corporation in March 2003, moved its incorporation to Wyoming

in December 2004, and changed its name again to Blackout Media Corporation in January 2006.

During this period, Winick was FCAH's sole officer, director, and employee.  He controlled over

99% of FCAH stock through at least 2005.

13.     In November 2007, Winick announced his resignation from Blackout Media.

**B.      The Spinoffs and Winick's Subsequent Sales of the Subsidiaries**

14.     Based on FCAH's public filings, from April 2002 to May 2004, FCAH spun off 59 wholly-owned Subsidiaries through unregistered distributions of their securities to FCAH shareholders.

15.     During the spinoff period, FCAH was subject to the reporting requirements of the Exchange Act, but it never filed any required periodic reports with the Commission. Although FCAH disclosed the spinoffs on Forms 8-K and proxy statements on Schedule 14A, these filings did not contain any meaningful disclosure regarding the financial or business operation of FCAH or any of the Subsidiaries. Moreover, all but one of the Subsidiaries were not subject to the reporting requirements of the Exchange Act, and none of the Subsidiaries had filed any Securities Act registration statement in connection with these transactions. The one reporting Subsidiary never filed any required periodic reports with the Commission.[2] As a result, during the spinoff period, there was no publicly available financial information about FCAH or any of the Subsidiaries.

16.     During the spin-off period, Winick owned in his name 83% of FCAH stock, and had control over an additional 16.5% of FCAH stock through his wife, several of his entities, and four of his friends.

17.     Winick executed FCAH's spinoff transactions and effected the distribution of the Subsidiaries' shares to FCAH shareholders. FCAH "reported" these transactions through Forms 8-K and proxy statements on Schedule 14A that Winick prepared, filed, and/or signed. Although Winick received restricted stock of the Subsidiaries from the spinoffs, he distributed shares of purportedly unrestricted stock (so-called "free trading" shares) of the Subsidiaries to the "other" FCAH shareholders, including his wife, the entities he controlled, four of his friends, and approximately 1,900 public shareholders who held the stock in street name.

---

[2]     The one reporting company was Naturally Niagara Beverage Corporation, which filed a registration statement on Form 10SB in March 2001. The company was spun off from FCAH in July 2002, and the registration of its securities was revoked by the Commission on September 20, 2006.

18.     As a result of the spinoffs, Winick acquired ownership or control of over 99.5%

of the Subsidiaries' stock, and amassed an inventory of public shell companies.  He subsequently

sold many of the Subsidiaries to third parties seeking to raise financing through the public

market.  To facilitate the sale of the shells, Winick assembled a "due diligence package" for

some of the Subsidiaries, which typically included corporate records showing the incorporation

of the company by FCAH, its spinoff from FCAH as evidenced by the Forms 8-K and proxy

statements, and a shareholder list prepared by the company's transfer agent.

19.     Winick's sale of his controlling interest in the Subsidiaries typically involved a

change of control transaction in which a Subsidiary was combined with a private company

through a reverse merger.  For selling his controlling interest in the Subsidiary, Winick received

cash (which ranged from $50,000 to $100,000), stock in the post-merger company, or a

combination of stock and cash.  Whenever necessary to facilitate the sales, Winick also

transferred his friends' shares of purportedly unrestricted stock to the purchasers or their

intermediaries.

20.     After the spinoffs, Winick traded in the shares of some of the Subsidiaries to

create the appearance of active trading in the securities, and handled applications to Nasdaq to

obtain new trading symbols for the post-merger companies.  The stocks of many of the

Subsidiaries subsequently became quoted on the OTC Bulletin Board, Pink Sheets, or the over-

the-counter, or "grey," market.  As of the date of this complaint, one of the Subsidiaries is quoted

on the OTC Bulletin Board, eleven are quoted on the Pink Sheets, while 37 trade on the grey

market.  Many of these companies have experienced repeated changes of control, while some

became targets of touting campaigns or possible fraud.[3]

---

[3]     For example, on March 8, 2007, the Commission suspended trading in the stocks of five
Subsidiaries, Amerossi International Group, Inc., Koko Petroleum Inc., Relay Capital Corp.,
Wataire Industries Inc., and WayPoint Biomedical Holdings, Inc., all the subjects of spam
campaigns.  In addition, simultaneously with the filing of this complaint, the Commission is also
filing an injunctive action in the Northern District of California against one of the Subsidiaries,
ZNext Mining Corporation, Inc., formerly known as Pearl Asian Mining Industries, Inc. and its
principal, Elvira Gamboa, alleging antifraud and registration violations.

21.    Winick has traded the stock of a number of the Subsidiaries after their spinoffs through several accounts he (or his wife) owns or controls at a New York brokerage firm. He profited by approximately $3.2 million from these trades from 2003 through 2007.

22.    The examples below illustrate how Winick spun off the Subsidiaries without registration and sold them as public shells.

    a.    **Sparrowtech Multimedia Inc./RV Wireless, Inc.**

23.    FCAH filed a Form 8-K and a proxy statement on March 3, 2004 to report the spinoff of Sparrowtech Multimedia Inc. ("Sparrowtech"). These filings did not disclose anything about Sparrowtech's business or financial condition. Sparrowtech was incorporated in Ontario, Canada in January 2004 for the purpose of being spun off as a public shell for a Canadian individual, who had made a deal with Winick to pay for the shell upon the spinoff. However, because this individual failed to pay, she did not receive the spinoff as planned.

24.    As a result of the spinoff, FCAH distributed 30,142,699 shares of common stock of Sparrowtech to FCAH shareholders, of which Winick received 25 million shares of restricted stock (83%), his wife received 10,000 "free trading" shares, and his four friends received a total of 5 million "free trading" shares. FCAH's proxy statement did not disclose the shares held by Winick's wife nor Winick's control over the shares held by his four friends.

25.    In August 2004, Winick sold Sparrowtech as a public shell to another individual. To effect the change of control, Winick reincorporated Sparrowtech in Nevada, changed its name to RV Wireless, Inc., and named the buyer the sole director and president. Winick also handled RV Wireless' request to Nasdaq for a new trading symbol. Winick forged the buyer's signature in correspondence with Nasdaq and to issue shares of stock, including 5,000 shares of purportedly unrestricted RV Wireless stock to two Winick-related entities.

26.    After Winick transferred control of the company, Winick bought a total of 3,514 shares and sold a total of 1,000 shares of RV Wireless' shares from September to December 2004. During this period, the company's stock was extremely thinly traded with an average daily trading volume of 115 shares. Winick's purchases and sales of the shares created the

appearance of a public market for the stock, and helped to maintain the stock price at a level between $4.00 and $5.75 despite the lack of any business activity or financial information about the company.

27.    Winick sold more shares of RV Wireless from March 2005 through 2007 and profited by over $113,000.

        **b.**        **SecurityPlus, Inc./WayPoint Biomedical Holdings, Inc.**

28.    FCAH reported the spinoff of SecurityPlus, Inc. in a Form 8-K filed on July 26, 2002, which described SecurityPlus as a Delaware corporation that "sells its internet based monitor services to home owners" and had $25,000 in assets. FCAH filed another Form 8-K on October 15, 2002, which was signed by Winick, to report the completion of the spinoff via a merger with a company called MiSecurityplus (Canada). A shareholder list showed that in August 2002 five entities controlled by Winick received 96% of the company in shares of purportedly unrestricted stock.

29.    In May 2003, the company reincorporated from Ontario to Wyoming, and Winick helped to obtain a new trading symbol from Nasdaq. Winick also tried to sell the company, and in June 2004 received 25 million shares of purportedly unrestricted stock for providing "consulting" services. In 2005, Winick negotiated the sale of MiSecurityplus to the owners of WayPoint Biomedical, a private company, and received additional "free trading" shares through one of his entities.

30.    As part of the transaction, Winick prepared a "due diligence" package that included a "Directors Resolution" of Adatom.com (FCAH's predecessor) dated June 26, 2001, which authorized the formation of MiSecurityPlus Inc. Even though Winick did not join the company until mid-2002, he falsely signed this document as the sole director of Adatom.com. He also falsely signed Adatom.com's subscription of shares also dated June 26, 2001.

31.    Winick sold shares in MiSecurityplus from November 2003 through July 2005 and profited by at least $122,000. In March 2007, the Commission suspended trading in the stock of WayPoint Biomedical.

**c.     The Goldberg Report Ltd./HEE Corporation**

32.     FCAH filed a Form 8-K and a proxy statement on July 9, 2003 to report the spinoff of The Goldberg Report Ltd., an Ontario, Canada corporation.  Other than describing the company's business as "to act as a watchdog of sort and do analysis reports on the securities industry and its members …," the Form 8-K and proxy statement did not contain any disclosure regarding the company's or FCAH's finances or business operations.

33.     The company changed its name to HEE Corporation in December 2003.  Winick then sold his controlling interest in HEE to an individual from Kansas, who had pled guilty to violating Kansas' securities laws in 1987 and 1992, and was the subject of two related cease-and-desist orders by the Kansas Office of Securities Commissioner.  After the change of control, Winick stayed on as HEE's president until December 2004, while the individual operated the company behind the scenes from Kansas.

34.     From 2004 to 2005, HEE marketed and sold a drug supplement it claimed could cure Type II diabetes, and issued numerous press releases to promote the product.  During 2004, Winick sold shares of purportedly unrestricted stock of HEE and profited by more than $17,000.

**C.     Failure to Comply with the Reporting Provisions of the Exchange Act**

35.     FCAH's common stock was registered with the Commission under Section 12(g) of the Exchange Act from October 1997 to June 2004.  As such, FCAH was required to file with the Commission periodic reports, including annual reports on Form 10-K, quarterly reports on Form 10-Q, and current reports on Form 8-K.

36.     From April 2002 to May 2004, FCAH never filed any required periodic reports with the Commission, and did not file any current report on Form 8-K to report that Winick acquired control of FCAH and became its sole director and officer.

37.     Although FCAH filed current reports on Forms 8-K to "report" the spinoffs, these Forms 8-K failed to disclose the true nature of FCAH's spinoff transactions, failed to disclose any financial information about FCAH and any of the Subsidiaries, and failed to disclose that Winick was to acquire control over 99.5% of the Subsidiaries from the spinoffs.

38.     Winick prepared, filed, and signed all of FCAH's Forms 8-K filed with the

Commission after October 2002. As the only officer, director, and employee of FCAH, Winick was solely responsible for ensuring that FCAH complied with its reporting obligations and filed accurate reports.

39.     Winick never filed the required report to disclose his initial acquisition of at least 83% of the common stock of FCAH in mid-2002, or any subsequent changes to his beneficial ownership interest in the company.

**D.     <u>Failure to Comply with the Proxy Provisions of the Exchange Act</u>**

40.     Beginning in May 2003, FCAH filed proxy statements on Schedule 14A purportedly because its board of directors was soliciting shareholder approval of the spinoff transactions. The proxy statements typically contain a letter to the shareholders from Winick as chairman of the board, stating that the spinoff transaction was approved by the board of directors at a meeting (although Winick had been the sole director of the company during the period), announcing the date of a special shareholder meeting to approve the spinoff transaction, and soliciting a proxy to vote at the meeting. The location identified for the shareholder meetings was the company's business address, which is a UPS mailbox.

41.     None of the proxy statements contains any financial or other information about FCAH or any Subsidiary, other than listing the company name and capital stock, and that Winick was an 83% holder of FCAH stock who would receive 83% of the Subsidiary's stock in the spinoff. The proxy statements did not disclose that Winick's wife and entities he controlled were shareholders of FCAH and were to receive shares from the distribution, and that Winick also had control over another 16.5% of the outstanding shares that were owned by four of his friends. Winick listed himself as the director and officer of most of the Subsidiaries. For some companies, he listed some associates and friends as the officers or directors, although these individuals had no involvement in the business of FCAH or any of the Subsidiaries.

42.     Winick was soliciting proxies because he was FCAH's sole director and FCAH's purported board of directors was soliciting proxies. Winick prepared and filed all of the proxy statements on Schedule 14A, signed the accompanying letters to shareholders as chairman of the board, and appointed himself the proxy in connection with the proxy solicitation.

## FIRST CLAIM FOR RELIEF
## UNREGISTERED OFFER AND SALE OF SECURITIES
### Violations of Sections 5(a) and 5(c) of the Securities Act
### (Against Blackout Media and Winick)

43.    The Commission realleges and incorporates by reference ¶¶ 1 through 42 above.

44.    Blackout Media and Winick, and each of them, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

45.    No registration statement has been filed with the Commission or has been in effect with respect to any of the offerings alleged herein.

46.    By engaging in the conduct described above, Blackout Media and Winick violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## SECOND CLAIM FOR RELIEF
## PROXY VIOLATIONS
### Violations of Section 14(a) of the Exchange Act and Rule 14a-9 thereunder
### (Against Blackout Media and Winick)

47.    The Commission realleges and incorporates by reference ¶¶ 1 through 42 above.

48.    Blackout Media and Winick, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, knowingly, recklessly or negligently, solicited proxies by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, or omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct statements in earlier communications with respect to the solicitation of the proxy for the same meeting or subject matter which was false or misleading.

49.    By engaging in the conduct alleged above, Blackout Media and Winick violated, and unless restrained and enjoined will continue to violate, Section 14(a) of the Exchange Act,

15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. § 240.14a-9.

## THIRD CLAIM FOR RELIEF
### VIOLATIONS OF COMMISSION PERIODIC
### REPORTING REQUIREMENTS
#### Violations of Section 13(a) of the Exchange Act
#### and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder
#### (Against Blackout Media)

50.    The Commission realleges and incorporates by reference ¶¶ 1 through 42 above.

51.    By failing to file with the Commission annual and quarterly reports on Form 10-KSB and Form 10-QSB from 2002 through June 2004, Blackout Media violated, and unless restrained and enjoined will continue to violate, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 13a-1 and 13a-13 thereunder, 17 C.F.R. §§ 240.13a-1 and 240.13a-13.

52.    By failing to file with the Commission a current report on Form 8-K to report that Winick acquired control of FCAH and became its sole director and officer in 2002, Blackout Media violated, and unless restrained and enjoined will continue to violate, Rule 13a-11 under the Exchange Act, 17 C.F.R. § 240.13a-11.

53.    The Forms 8-K FCAH filed from April 2002 to May 2004 regarding the spinoff transactions failed to disclose the true nature of such transactions, failed to disclose any financial information about FCAH and any of the Subsidiaries, and failed to disclose that Winick was to acquire control over 99.5% of the Subsidiaries' stock from the spinoff transactions.  As a result, Blackout Media violated, and unless restrained and enjoined will continue to violate, Rule 12b-20 under the Exchange Act, 17 C.F.R. § 240.12b-20.

## FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF COMMISSION PERIODIC
### REPORTING REQUIREMENTS
#### Aiding and Abetting Violations of Section 13(a) of the Exchange Act
#### and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder
#### (Against Winick)

54.    The Commission realleges and incorporates by reference ¶¶ 1 through 42 above.

55.    Winick knowingly provided substantial assistance to Blackout Media's violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13.

56.    By engaging in the conduct described above and pursuant to Section 20(e) of the

Exchange Act, 15 U.S.C. § 78t(e), Winick aided and abetted Blackout Media's violations, and unless restrained and enjoined will continue to aid and abet violations, of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13.

## FIFTH CLAIM FOR RELIEF
### EQUITY BENEFICIAL OWNERSHIP REPORTING VIOLATION
Violations of Section 13(d) of the Exchange Act and Rule 13d-1 thereunder
(Against Winick)

57.    The Commission realleges and incorporates by reference ¶¶ 1 through 42 above.

58.    Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and Rule 13d-1 thereunder, 17 C.F.R. § 240.13d-1, require any person who acquires the beneficial ownership of more than five percent of any equity security of a class which is registered under Section 12 of the Exchange Act, 15 U.S.C. § 78l, to file reports of, and material changes to, his beneficial ownership of those securities.

59.    Winick failed to report his acquisition of, and changes to, his beneficial ownership of more than five percent of Blackout Media stock during a period when that stock was registered under Section 12 of the Exchange Act, 15 U.S.C. § 78l.

60.    By engaging in the conduct alleged above, Winick violated, and unless restrained and enjoined will continue to violate, Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and Rule 13d-1 thereunder, 17 C.F.R. § 240.13d-1.

## SIXTH CLAIM FOR RELIEF
### EQUITY BENEFICIAL OWNERSHIP REPORTING VIOLATION
Violations of Section 16(a) of the Exchange Act and Rule 16a-3 thereunder
(Against Winick)

61.    The Commission realleges and incorporates by reference ¶¶ 1 through 42 above.

62.    Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3 thereunder, 17 C.F.R. § 240.16a-3, require any officer, director and beneficial owner of more than ten percent of any class of equity security registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, to file reports of, and any changes to, his beneficial ownership of such equity security.

63.    Winick failed to report the acquisition of, and changes to, his beneficial ownership

of more than ten percent of Blackout Media stock during a period when that stock was registered under Section 12 of the Exchange Act, 15 U.S.C. § 78*l*.

64.     By engaging in the conduct alleged above, Winick violated, and unless restrained and enjoined will continue to violate, Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3 thereunder, 17 C.F.R. § 240.16a-3.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

(a)     Issue findings of fact and conclusions of law that the defendants committed the alleged violations.

(b)     Issue judgments, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Blackout Media from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), Sections 13(a) and 14(a) of the Exchange Act, 15 U.S.C. §§ 78(m)(a) and 78n(a), and Rules 12b-20, 13a-1, 13a-11, 13a-13, and 14a-9 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 240.14a-9. Said judgment also would be binding, pursuant to Rule 65(d), on Blackout Media's officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them.

(c)     Issue judgments, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Winick from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), Sections 13(d), 14(a), and 16(a) of the Exchange Act, 15 U.S.C. §§ 78(m)(d), 78n(a), and 78p(a), and Rules 13d-1, 14a-9, and 16a-3 thereunder, 17 C.F.R. §§ 240.13d-1, 240.14a-9, and 240.16a-3, and from aiding and abetting violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13. Said judgment also would be binding, pursuant to Rule 65(d), on Winick's officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them.

(d)      Order Winick to account for and to disgorge all ill-gotten gains from his illegal conduct, together with prejudgment interest thereon.

(e)      Order Blackout Media and Winick to pay civil penalties, under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

(f)      Order Winick to surrender for cancellation shares of stock of any Subsidiary and its successor he owns or controls, under Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 77u(d)(5).

(g)      Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently barring Winick from participation in any offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock under Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6).

(h)      Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

(i)      Grant such other and further relief as this Court may determine to be just and

necessary.

Respectfully submitted,

Dated:  June 12, 2009

_____
Robert B. Blackburn (RB-1545 )
Local Counsel for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center, Room 4300
New York, NY  10281-1022
E-Mail:  BlackburnR@SEC.GOV
Phone:   (212) 336-1050
Fax:      (212) 336-1317

_____
Junling Ma
John M. McCoy III
Finola Halloran Manvelian
Marshall S. Sprung
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036
E-Mail: maj@sec.gov
Phone: (323) 965-3998
Fax:      (323) 965-3815

**Exhibit 1**
**FCAH Spun-off Subsidiaries**
(As of 6-8-2009)

| Subsidiary | Subsequent Changes of Control | Trading Symbol(s) | Trading Market | FCAH 8-K Filing Date |
|---|---|---|---|---|
| Adatom.com (Oregon) | | | | 07/26/02 |
| Adirondack Springs Beverages Inc. | | ADIR | Grey Market | 03/23/04 |
| AQ Corporation | | AQCP (AQRRV) (AQRR) | Pink Sheets ("PK") | 04/11/02 |
| Broadspot Wireless Inc. | | BRWS (BRWI) | Grey Market | 12/10/03 |
| Broadspot World Wide Wireless Inc. | | BWWD (BWWW) (BWWWF) | Grey Market | 07/21/03 |
| Central Asia Development and Construction Co. Ltd. | Nadir Energy and Mining Corp. (as of 6/08) Amerossi Energy Corp. (as of 11/12/04) | NADI (AMER) (CEASF) | Grey Market | 08/19/03 |
| Deep Water Investment Inc. | | DPWI (DPWIF) | | 04/20/04 |
| Dtec Security Inc. | Sigma Global Corp (as of 10/04) | SGGC (DTCJ) | Grey Market | 04/14/04 |
| Energy Concepts Inc. | Lord Tech, Inc. (as of 4/08) Quotezy, Inc. (as of 3/06) Nine Muses Entertainment, Inc (from 2/06 to 3/06) (Cross Street Distribution 4/04/-06) | LRDT (QTZI) (NMSE) (CSDN) (EGYC) | Grey Market | 12/08/03 |
| Equity Retirement Savings Distributors Inc. | D Mecatronics, Inc. (as of 3/05) | DMTA (DMTN) (ERSD) | PK | 12/17/03 |
| Farm Fresh Food Processors Inc. | MycoBiotech Inc. (as of 1/04) | MYBI | Grey Market | 4/24/03 05/30/03 |
| Findent Engineering Security Ltd. | Global Uranium Power Corp. (as of 3/05) Fox River Group, Inc. (as of 7/04) | GLPC (FXRC) (FDNEF) | Grey Market | 07/23/03 |
| First Canadian American Credit Services Ltd. | Relay Capital Corp. (as of 12/04) Galloway Oil & Gas Inc. (5/04 -12/04) | RLYC (FCANF) | Grey Market | 07/07/03 |
| First Canadian American Financial Services Inc. | Koko Petroleum, Inc. (as of 4/04) | KKPT | Grey Market | 06/24/03 |
| First Canadian American Investment Ltd. | | FCDAF | Grey Market | 05/03/04 |

1

**Exhibit 1**
**FCAH Spun-off Subsidiaries**
(As of 6-8-2009)

| Subsidiary | Subsequent Changes of Control | Trading Symbol(s) | Trading Market | FCAH 8-K Filing Date |
|---|---|---|---|---|
| First Canadian American Trust Company | BioMed Technologies, Inc. (as of 11/19/07) Amerossi International Group, Inc. (as of 01/06) Suncrest Energy, Inc. (9/03 to 1/06) | BIOT (AMSN) (SNYY) (SGYY) (SEIP) (FCAFF) | Grey Market | 06/09/03 |
| First Caribbean Mining Development Inc. | Dynamic Media, Inc. (as of 11/05) Circular Logic Systems Inc. (as of 3/05) | DYNM (CULG) (FBBNF) | Grey Market | 07/25/03 |
| First Eastern Energy Development Inc. | Alliance Enterprise Corp. (as of 7/04) | AETR (FEDVF) | PK | 07/28/03 |
| First European American Credit Ltd. | | | | 01/21/04 |
| First Mediterranean Gold Resources Inc. | Osage Exploration and Development, Inc. (as of 07/07) Osage Energy Corp. (as of 05-06) Kachina Gold Corp (as of 04/05) (Advantage Opportunity, Inc. (05/04-04/05) | OEDV (OSGE) (KCHG) (FMGOF) | OTCBB | 07/30/03 |
| First Pioneer Maintenance & Supplies Inc. | Blackgold Natural Resources PLC (as of 10/05) Black Gold Gas & Oil, Inc. (as of 3/5/05) | BGNRF (BKGD) (FPNMF) | Grey Market | 03/22/04 |
| First Public Securities Transfer Corporation | | FPTFF | | 07/15/03 |
| First Western Environmental Protection Inc. | | FWEPF | Grey Market | 08/04/03 |
| Flugal Financial And Marketing Services Inc. | New Life Solutions, Inc. (as of 03/05) | NLFS (FLFSF) | Grey Market | 04/27/04 |
| Flugal Financial Services, Ltd. | Link Linux, Inc. (as of 3/10/06) SpecOps Labs, Inc. (as of 3/05/05) Wierig International Inc. (as of 9/08/03) | LLNXF (SPLMF) (WIICF) (FUGLF) | Grey Market | 07/26/02 |
| Form 59 Furniture Design Inc. | Rio Grana Resources Inc. (as of 10/03) | RGRG | Grey Market | 04/24/03 05/30/03 |
| Form 59, Inc. | AMR Gold Resources, Inc. (as of 10/04) | AGLR (FMIC) | Grey Market | 12/09/03 |
| Fossil Graphics Inc. | Wataire Industries, Inc. (as of 3/04) | WTAF | Grey Market | 06/23/03 |
| Freshtech Food Processors, Ltd. | China Capital Holdings Corp. (as of 2/06) | CCPH (EXTP) | Grey Market | 02/10/04 |

2

## Exhibit 1
## FCAH Spun-off Subsidiaries
(As of 6-8-2009)

| Subsidiary | Subsequent Changes of Control | Trading Symbol(s) | Trading Market | FCAH 8-K Filing Date |
|---|---|---|---|---|
| Future Quest Inc. | Extreme Poker, Ltd. (as of 6/04) Intervision Network Corp (as of 1/28/08) Future Quest Nevada, Inc. (as of 3/05) | (FHFP) IVSW (FQNI) (FQIFF) | PK | 10/17/03 |
| Golden Quest Ltd. | | | | 07/26/02 10/15/02 |
| Goodies Galore Packaging Inc. | Trivos, Inc. (as of 6/06) Sun Rayz Products, Inc. (as of 6/04) | TRVO (SRPI) (GGPGF) | Grey Market | 06/19/03 |
| IBA Ltd. (Belize IBC) | Vision Airships, Inc. (as of 10/06) Avalon Partners Holdings, Inc. (as of 2/06) | VPSN (VPSI) (AVPD) (IBBFF) (IBBFV) | Grey Market | 04/11/02 |
| Josanden International Resources Inc. | Sandoil, Inc. (as of 3/17/05) Global IT Staffing Group, Inc. (7/27/04) Nova Solutions Group, Inc. (as of 7/21/04) | SDOL (JIRIF) | Grey Market | 08/06/03 |
| Microgenix Canada Inc. | U.S. BioTec (as of 6/04) | USBC (USBO) (MGXCF) | Grey Market | 03/26/04 |
| Microgenix Filtration Systems Inc. | Nanotech Industries, Inc. (as of 10/25/2007) Amerossi EC, Inc. (as of 5/06) | NNTH (ARSS) (MGFFF) (MGXFF) | Grey Market | 07/11/03 |
| Micro Genix Manufacturing Inc. | | MGXMF | PK | 07/16/03 |
| Naturally Niagara Beverage Corp. | Everyones Italian.Com, Inc. [Enterprise Traders, Inc. (E Trade Systems), Inc. (as of 9/05) Personal Portals Online, Inc. (as of 2/04) E Com Force Corp. (8/03 to 2/04)] | EPTJ (ETFJ) (ETDS) (PPON) (ECFP) (NPREF) | | 07/26/02 10/15/02 |
| New Wave Windmills Inc. | AirCharter Express (as of 10/04) | ACHT (NWWIF) | | 06/09/03 |
| Pearl Asian Mining Industries Inc. | ZNext Mining Corporation, Inc. (as of 12/11/2007) | ZNXT (PAIIP) (PAIM) (PRLGF) (PRMN) | PK | 08/19/03 10/09/03 |

3

**Exhibit 1**
**FCAH Spun-off Subsidiaries**
(As of 6-8-2009)

| Subsidiary | Subsequent Changes of Control | Trading Symbol(s) | Trading Market | FCAH 8-K Filing Date |
|---|---|---|---|---|
| | | PAMJF | | |
| Second Bavarian Mining and Engineering Services Inc. | China Vitup Healthcare Holdings, Inc. (as of 10/06) Tubac Holdings, Inc. (as of 8/04) | CVPH (TBAH) (SBMNF) | Grey Market | 08/12/03 10/09/03 |
| Second Colonial Mining and Engineering Services Inc. | Direct View Technology Group, Inc. (as of 12/08) Homeland Integrated Security Systems Inc. (as of 10/04) | DVWG (HISU) (HISC) (SMGEF) | PK | 08/14/03 10/09/03 |
| Second Mongolian Mining Security Services Inc. | | SEMLF | Grey Market | 08/18/03 |
| Security Innovations Systems Inc. | Pharmaglobe America Group, Inc. (as of 5/04) | PMGA | Grey Market | 03/23/04 |
| Security Plus Inc. | WayPoint Biomedical Holdings, Inc. (as of 5/05) MiSecurity Plus, Inc. (as of 10/02) | WYPH (MSCP) (MSCU) (MSCUF) | Grey Market | 07/26/02 10/15/02 |
| Seville Investment Funds Corporation | VoIP Technologies, Inc. (as of 04/04) | VIPT (SVVFF) | Grey Market | 07/10/03 |
| Sparrowtech Multimedia Inc. | Resource Group International, Inc. (as of 11/8/07) Mobicom Communications, Inc. (as of 5/06) RV Wireless, Inc. (as of 9/04) | RSGR (RGII) (MBMC) (RVWS) (SRWTF) | PK | 03/03/04 |
| Sweet Selections Ltd. | Hurasu Resource Corporation (as of 3/09) First Platinum Retail Innovations, Inc. (as of 2/16/07) First Platinum Card Corp (as of 9/26/2006) Textrabet (as of 9/23/2005) Distributed Diagnostics, Inc. (as of 6/04) | (FPRT) (FPDP) (TXIB) (DDGX) (SWNL) | | 03/24/04 |
| The Berkshire Collection Inc. | | BKRCF (BKCL) | | 04/22/04 |
| The Feinstein Report, Inc. | United E&P, Inc. (as of 4/17/2007) | UTDE (FNRP) | Grey Market | 02/20/04 |
| The Goldberg Report Ltd. | Preachers Coffee, Inc. (as of 4/08) HEE Corp. (as of 12/03) | PRCF (HCCF) (GOBGF) | PK | 07/09/03 |
| The Heritage Collection Inc. | Canary Resources, Inc. (as of 1/05) (Sakha Resource Technologies Corp. (7/04-1/05) | CYRR (HETG) | PK | 04/22/04 |

4

**Exhibit 1**
**FCAH Spun-off Subsidiaries**
(As of 6-8-2009)

| Subsidiary | Subsequent Changes of Control | Trading Symbol(s) | Trading Market | FCAH 8-K Filing Date |
|---|---|---|---|---|
| Universal Beverage Inc. | New Horizon Group, Inc. (as of 10/08)<br>Air to Water Co. (The) (as of 8/28/2007)<br>Global X-Ray Exchange, Inc. (as of 6/05) | NHGP<br>(AIRO)<br>(GBXY)<br>(UVBGF) | Grey Market | 04/20/04 |
| Warlock Holdings Inc. | Professional Services Network Corp. (as of 11/03) | PSNN | PK | 06/30/03 |
| Wi-Fi Wireless Ltd. | | WFWRF | Grey Market | 05/05/03 |
| World Assets Group Inc. | Mobile Assets Corp. (as of 12/04) | MBAP<br>(WLRDF) | | 07/26/02<br>10/15/02 |
| Xcelarator Interactive Inc. | St. James Capital Holdings, Inc. (as of 4/05)<br>Nutribrands, Inc. (as of 10/04)<br>Harley Street Clinics Inc. (as of 6/03/04) | SJCH<br>(HLYT)<br>(XCLI) | Grey Market | 03/25/04 |
| Xcelarator Marketing Inc. | | XCMGF | Grey Market | 07/14/03 |
| Xcelarator Studios Inc. | | XCSD<br>(XCSDF) | Grey Market | 06/27/03 |

5